The next case, number 23-1368, Anthony Cappello v. Restaurant Depot, LLC, et al. At this time, if counsel for the appellant would introduce herself on the record to begin. Good morning, your honors. Amanda Quinlan from McLean Middleton on behalf of the plaintiff appellant, in this case, Mr. Anthony Cappello. At this time, Judge Helpe, I'd like to reserve one minute for rebuttal. Okay, and before you start, let me note that there are two appellees, and this applies to everybody, when you refer to one or the other, please be very specific because obviously each has a different brief, and you may argue they're exactly situated, but I think the facts are different to each, so please be very specific so we can follow you, and the record is clear. Understood, your honor. Go ahead. This court should reverse the district court order in this matter for three reasons. First, the court erred in making a finding of fact that the only place Mr. Cappello could be injured was where he ate the salad in New Jersey. Second, Mr. Cappello's foodborne illness is related to the defendant's contacts of selling food to New Hampshire businesses. And finally, all three prongs of specific personal jurisdiction are met in this test, in this case, which is why this court should reverse and allow the case to proceed on its merits. Your honors, this case is just like the Ford case. There we have a car manufactured in one state, sold to the plaintiffs. No, it's not. Excuse me, your honor. It is not at all like the Ford case. This is a guy from New Hampshire who is on a business trip, and on the business trip, he gets takeout food from a deli. I'm not even sure it's a restaurant, a deli. He gets takeout food. He eats it. The symptoms of food contamination occur, what? The next day, two days later, when he's back home in New Hampshire. How is the food business at a single deli in New Hampshire and the suppliers to that deli, how is that at all like the Ford Motor Company, which sells cars throughout the country, expects people to take those cars to different locations, has service centers, and most probably every state has a number of service centers. And the purpose of the car is to give you mobility to go anywhere you want. So how is this remotely like that case? And even in that case, the concurring justices said, look, there's no reason to get into the but-for question, because under all of the traditional international shoe criteria, it's quite clear that there is jurisdiction over Ford. So what's your response? My response, Your Honor, is that there is a latent defect in this product, just like there's a latent defect in the car cases. When the plaintiffs in Ford bought the product out of state, they didn't have a cause of action at that point. It was until that defect manifested itself that they had an injury and they could bring suit. Mr. Capello. So even if we assume there was injury in New Hampshire, he could have sued in New Jersey the deli, correct? He could have, Your Honor. And in fact, he did. He did. He sued the deli only, and only after jurisdiction was contested in New Hampshire. Okay. He had both a tort claim and a contract claim. That's correct. But he ignored the statute of limitations in New Jersey for the tort claim. So by the time he sued, he only had the contract claim left. Is that correct? He did not ignore that. He only brought the contract claim against the deli. But a tort claim would have been too late. Under when he brought the case. Under New Jersey law, but not under New Hampshire law. That is correct, Your Honor. And in this instance, however, Mr. Capello has met his burden to show the jurisdiction in New Hampshire. It took, it was alleged below, and the court was supposed to apply the prima facie standard when it used this jurisdictional test to read those allegations in the light most favorable to Mr. Capello with all inferences in favor of jurisdiction. Instead of looking at that incubation period, which is supported by the science, which is alleged in the complaint, the court made a medical determination based on no counter factual allegations made by either appellee or based on any evidentiary hearing. There is no expert testimony. Can I ask you a question? I understand why you're arguing based on the case law that the injury happened in New Hampshire. But even if we put aside the question of where the injury itself happened, it's certainly true and I think uncontested that the damages that your client experienced, he experienced in New Hampshire, correct? That's correct, Your Honor. Everything we know about this infection, and that's really what this injury is, it's an infection, which takes time to manifest, happened in New Hampshire. He first experienced all of his debilitating symptoms. If I may, are you saying there can only be one place of injury? Your Honor, no. This is where the injury occurred here is New Hampshire, but there's... So on your theory, he could have been injured both in... He was injured both in New Hampshire and in New Jersey. No, Your Honor. Let me clarify my response. There's only one location of injury here and it's New Hampshire. There's multiple places where jurisdiction... What is the law that says there's only one place of injury? The law that there's only one place of injury... Here, it's just the facts of this particular case that his injury was only in the state of New Hampshire. There are multiple sites where jurisdiction could be asserted, and that's in the Bristol-Myers-Squibb case. We see the site of ingestion is one potential hook. The site of injury here in New Hampshire... I thought Bristol-Myers suggested there could be more than one place of injury. That is nothing that really the court got into in great depth in that case, given the fact that there was no connection for the residents, the non-California residents in that case, to bring their suit in California. I don't see how it helps you to be arguing there can be only one place of injury. So let's assume, arguendo, that New Hampshire is a place of injury, at least the way the New Hampshire court has construed the New Hampshire long-arm statute. Let's assume it's a place of injury. You still have to meet the relatedness test and the reasonableness test. That's correct, Your Honor, and it's Mr. Capella's position that he does, in fact, meet both. The contacts here... Okay, tell us why. The contacts here of the appellees are the sale of food to New Hampshire businesses, and getting sick from food is related to that type of business contact. That's as to one of the two defendants. The other doesn't have any direct sale of businesses to New Hampshire, correct? There's no direct sales, Your Honor. However, that is not necessary for there to be jurisdiction. Basically, they place it in... By selling New England, they should expect that it's going to flow in commerce to New Hampshire and elsewhere, correct? It's more than that, Your Honor. We have uncontested on page 266 of the record, and at no point when contested by DiRigo, that they targeted specifically major New England distributors and grocery stores for the purpose of selling that good into New Hampshire. And in New Hampshire, no New Hampshire ones, right? Excuse me? None located in New Hampshire. It's located elsewhere in New England, but they knew... For example, if they sell it to a Massachusetts distributor, that distributor, the clients are in New Hampshire. That's right, Your Honor. And that is uncontested in the record below, and given the prima facie standard, should have been read in the light most favorable to Capello. We also have in this case... But counsel, the way that they're selling it, though, that I'm struggling with, based on what they've said, they put the product on the truck, and then they're done. And then they don't really know exactly where their product is going to end up. And I thought that there was case law that was pretty clear that just putting a product in commerce without knowing that it's going to end up in a particular state like New Hampshire, that's just not enough. So why is the fact that they put a product on a truck that may go to New England, and it may go to Massachusetts, or may go to New Hampshire, but it might not, why is that enough? What case says that's enough? Well, Your Honor, there's the defendant here, DiRigo, cannot hide behind the freight onboard business model. Just like the case in International Shoe, there's a freight onboard business model there as well. Indirect service to a market is enough for personal jurisdiction. And a company like DiRigo that has in the business... But is it a market to New Hampshire? I guess that's my question, because you're suing in New Hampshire. So why is it enough what they've done to sue them in New Hampshire in particular? I direct, Your Honors, to page 266 of the record where it is said that strategy of targeting those large New England distributors and grocery stores that was with the intent of selling the product in New Hampshire. We have it on New Hampshire shelves on page 69 through 70 of the record. And given the size and scope of DiRigo's business, it would be vastly unfair to say that because they don't handle the shipping to any of the states, they're absolved from jurisdiction in any of those states where it doesn't grow the lettuce. So this is sort of like a stream of commerce that's predictable, it's going to end up there. It's more than that, Your Honor. They actually know it's going to end up there through that stream. That's our position, Your Honor. Would it be different? Let's assume Mr. Capello was from Montana. And there's no, you know, none of these producers end up in Montana. He goes up there and he gets sick. There wouldn't, you know, based on, you would differ that. In Montana, there would be no jurisdiction, correct? Correct. If there's no contacts in Montana, then there can be no revenue. All the sales and everything are limited to New England and contacts. Then, you know, so you can distinguish that case. That's correct. As long as there are contacts there and they are related to the injury, then that's what the court in Ford said. Then that's enough for relatedness. Also, Counsel, is your argument that DiRigo could be sued basically in any state then? I understand there need to be additional facts, but based on your stream of commerce argument, you're saying that because they sell to distributors that could then end up selling their product to various states, they could be sued in any state under that theory? I wouldn't characterize it as a stream of commerce theory. There is actions taken by DiRigo to get its product into these stores across the United States. There's an indemnity agreement here between Restaurant Depot and DiRigo where DiRigo agrees to indemnify Restaurant Depot anywhere that there's a breach of warranty claim against one of its products. It knows anywhere there is a state with Restaurant Depot members, there could be an injury from its products. You can say that about just about every business that has national commerce in the U.S. but chooses to distribute only to a few states. Let's turn to Restaurant Depot, please. Yes, Your Honor. Restaurant Depot, too, has sufficient business contacts and substantial business contacts in New Hampshire, thousands of members that generate millions of dollars in revenue for Restaurant Depot. It directly sells its products to New Hampshire by means of delivery partners. Now, Restaurant Depot would have this court ignore that contact. Okay, let's assume that they have chosen to do business in New Hampshire as a result of all of these contacts and the amount of money that they make. That still doesn't get you there. You still have to show relatedness to the underlying cause of injury, not necessarily, well, in part, the places of the injury, and then you have to show it's reasonable. So let's go back to relatedness. The contacts here are the sale of food, the sale of lettuce to New Hampshire businesses, and it's that type of product that injured Mr. Capello. Just like in Ford, it's of no moment that he didn't buy it in New Hampshire, just like it wasn't of any moment that the plaintiff didn't buy the car in Montana or Minnesota. We also have from Restaurant Depot direct sale into the state of New Hampshire of products. We have direct targeting of those businesses. No, no, no, no. We're on relatedness, and the answer you've given is the type of product is the same, i.e. lettuce. What else do you have? That is what this case is about, and that's exactly what Ford is about. And you say that's enough to satisfy relatedness. Yes, Your Honor. The type of product that Mr. Capello is injured by is the type of product that Restaurant Depot reaps the benefit from in its business contacts in New Hampshire. It is also reasonable in this case to assert jurisdiction over both of the appellees. We have a plaintiff whose colon was lost due to eating the food that was sold by both of the appellees. Traveling outside of that jurisdiction to litigate his case is an undue burden for him. New Hampshire has a great interest here in seeing. You know, there isn't really you'd first have to establish liability, and all of their witnesses are not in New Hampshire, right? That might be so, Your Honor, but all of the witnesses. Well, predictably it's so. All right, go on. Mr. Capello's witnesses, however, and all of that evidence would be found in the state of New Hampshire. He was treated. That's true, but this issue comes up in every single due process case. In every single due process case, the person prefers to be in a particular court because it's his home court. On that theory, there is never a due process constraint on the assertion of personal jurisdiction. So that argument can't go very far. Well, under Ford, Your Honor, it did. There were sufficient contacts in the forum state, and it was related to the injury that was suffered by the plaintiff there. And in terms of the evidence question that Your Honor raised, it's not clear that that evidentiary burden would be any less if this were in New Hampshire. We have to talk about how the lettuce got onto the truck in California. We have to talk about how it got to the stores and to the cafe. There's nothing unreasonable about allowing a man who lost his colon from eating the products from the Peleys to sue them in his home state where he was injured and where they've reaped a benefit from their business contacts. What if instead of losing his colon, he had been food poisoned and was in bed rest and with diarrhea and vomit for three days? Would he still have jurisdiction in New Hampshire? Yes, Your Honor. The loss of the colon simply goes to show how apt it is in this particular case and how reasonable it is for him to be able to litigate in his home state. Okay. Let me ask you one last question, then you have the rebuttal time. If there were jurisdiction in New Hampshire, would you be applying New Hampshire law or would you have to apply New Jersey law? You're arguing New Hampshire law, correct? That's right, Your Honor. Okay. Thank you. Thank you. Okay. Let's hear from the Peleys. Thank you, Counsel. At this time, if Counsel for Restaurant Depot would please introduce themselves on the record to begin. May it please the Court. Good morning, Your Honors. My name is Ken Walton. I represent the Peley Restaurant Depot. And we have agreed to divide our time. I will go for eight minutes and Dorigo's counsel as well. Okay. Please proceed. Thank you. Members of the Court, I think it's important to address some of the key facts in this case that were set forth in two affidavits from Brian Emmert, an executive at Restaurant Depot. In those affidavits, he explained that Restaurant Depot has never had a location in New Hampshire. It's never owned real estate in New Hampshire. It's never had any business interests in New Hampshire. It's never made deliveries to New Hampshire. It's never sold anything in New Hampshire. And it's never directly advertised in New Hampshire. Can I ask you about that, Counsel? Yes. I thought the record showed that your client has quite a number of business customers in New Hampshire and that it sends, I believe it's monthly, you can correct me if I'm wrong, sends them emails and flyers advertising its services. So, Your Honor. Is that correct or incorrect? Well, there's a line. It's correct today. You're saying it wasn't correct at the time of these events? That's correct. There were no business customers of your client in New Hampshire at the time of these events? Your Honor, if I may just refer you to the affidavit that's in the record, Appendix 288 and 289, just because I want to be precise when I'm answering your question. Before 2019, Restaurant Depot did not have any delivery partners. No, I'm not talking about delivery because you have a – my understanding is you have a brick-and-mortar business in Andover, which is obviously pretty close to New Hampshire. So I'm asking if you had business customers in New Hampshire. Well, again, with the dividing line, prior to 2019, did not deliver any product. But that's not the question Judge Rickleman is asking. The question is, you were aware or your client was aware that in 2019 or before, there were customers from New Hampshire who got from Andover. Maybe they picked it up. They sent somebody else to pick it up. They had a – I don't know what arrangement they had, but it was foreseeable. It was known that there were customers in New Hampshire, correct? For only non-food products. That's prior to 2019. There were non-food products. So certainly after 2019, they have picked up partners. But they still don't have anybody. And that's why I just wanted to be – I wanted to be precise answering the question because the affidavit on paragraphs 5, 6, and 7 draws that line. This incident occurred. They dispute that, as I recall. Is that correct? I believe they dispute it. And I believe the basis for that is the Internet advertisement that our client had. But there is no dispute to those facts, those affidavit facts coming from Mr. Emmerich, other than perhaps a legal argument. Okay, got it. So that's – and so moving to the actual argument. The plaintiff can't establish personal jurisdiction in New Hampshire because they just don't have – they can't meet the two-part inquiry of complying with New Hampshire's long-arm statute and, of course, the federal due process standard. New Hampshire's long-arm statute permits jurisdiction who, quote, transacts over a defendant. Counsel, you know, if we were doing this anew, I might agree with you. But the New Hampshire Supreme Court has said to the fullest extent of the due process clause. I agree. So, you know, there we have it. So I think you have to assume that we will apply New Hampshire's version of the extent of its long-arm statute. Yes, Your Honor. So if I may move to that inquiry. Starting with general jurisdiction, I think it's clear that there is no general jurisdiction. Yes, they don't even argue that. Okay. Moving to specific jurisdiction, the burden of proving, as the Court knows, is the three-part standard of relation, purposeful availment, and reasonableness. The district court who wrote, Judge Elliott, I believe, wrote a very thoughtful decision. They correctly concluded that Mr. Capello failed to establish sufficient facts. And obviously, the Ford case is a big topic of discussion in all of the papers. But the Ford case is completely distinguishable because Ford, first of all, I think it's important to point out that it's undisputed that the two incidents in Montana and the other state both happened in those states. So that alone would be a jurisdictional satisfaction. But also, it's Ford Motor Company. Yes, but didn't the incident happen in New Hampshire here? Well, Your Honor, I would argue. In New Jersey and then New Hampshire because it's he ate the food in New Jersey, but then he lost his colon in New Hampshire. I agree. But I would agree with the district court on that saying that the actual incident, the thing that caused all of his problems started by eating that salad. But didn't he experience all of his damages in New Hampshire? Well, it's hard to argue that he first experienced the symptoms caused by this food poisoning in New Hampshire. Yes, he did. But I don't think that's enough to meet the relatedness or the purposeful amount. Counsel, given the way the New Hampshire court has looked at injury occurring in New Hampshire and medical malpractice cases being enough to support the injury occurring in New Hampshire, I understand that you still have the argument that there is a distinction with the Ford Motor case. But even if, arguably, your client purposefully availed itself of the New Hampshire market, subject to the fact issues you've just raised, you still have relatedness and reasonableness. So could you get to those? Yes. And I think, if I may, Your Honor, just addressing one thing you just said, I'll just respond to your question a little out of order. On purposeful availment, I think that's a critical issue here because that is exactly what it sounds like, purposely availing itself in the state, like having 36 car dealerships in one state. Here, there was no purposeful availment by my client of New Hampshire. They are a basically they sell their products to other businesses. They sold this product to a New Jersey business, El Panino. But wasn't your client trying to sell its product, including its food products, to New Hampshire businesses? You're saying that you had New Hampshire-based customers. You said they were not food-based customers. They were other products. And, again, I'm just trying to understand this. On page 12 of your opposing counsel's brief, they note that, at the relevant time, your client made direct mailings to thousands of its active or formerly active members in the state of New Hampshire. And I assume you were trying to sell all of your products, not just part of them. Is that incorrect? Did you not try to sell your food products at the relevant time to New Hampshire-based businesses? I think if you look at the website, Your Honor, you could reach that conclusion. No, I'm not talking about the website. They're talking about direct mailings. Yes. Well, that's what I said, website. I meant any type of advertisement of that nature. But I do think the facts of the case also matter as well. I'm sorry. I just don't understand. Did your client seek to sell food products to New Hampshire-based businesses at the relevant time? Probably, yes. Thank you. Okay. Do you want to wrap up 30 seconds? Sure. But on the purposeful, I talked about, I want to address Judge Lynch's question. There was no relatedness of this incident to the state of New Hampshire. There was a sale of a product from California that made its way to New Jersey that then went to a New Jersey business. The plaintiff could have gotten in his car in New Jersey and driven to any other state in the country. But he drove to New Hampshire because that's where he lives. But that's not enough to make this incident and all the circumstances surrounding it related to New Hampshire. And I think that's the key distinction here between the Ford case and the case we're hearing today. And I think that's the analysis that the district court did below. Okay. Thank you. Thank you very much. Let's hear from Mr. Ober. Thank you, counsel. At this time, if counsel for the Dorigo Brothers would please introduce themselves on the record to begin. Good morning, Your Honor. I'm Scott Ober from Hassett & Donnelly. I represent Dorigo Brothers Company in this matter. Okay. And let me ask you a question. And once I ask it, then your seven minutes start running. But let's assume we were to find jurisdiction regarding Restaurant Depot. How would you distinguish your client's position as to jurisdiction from Restaurant Depot? And that's my question. And your seven minutes are going to start running now. As to that, Your Honor, I think just looking at the facts and the focus of Dorigo's contacts with New Hampshire in this case and actually the lack thereof, with respect to Dorigo, when we look at the context, Dorigo clearly is not located in New Hampshire, does not have any brick-and-mortar locations in New Hampshire, does not have customers in New Hampshire, does not market in New Hampshire, does not advertise in New Hampshire. The only connection, and this is Mr. Capello's argument, is the only connection to New Hampshire is that a product that Dorigo sells somehow ends up in New Hampshire because one of its customers distributes it to New Hampshire. And based on Mr. Capello's argument, the delivery of product to a state in New England would thereby make New Hampshire a, in fact, based on that argument, would make any state in New England a proper forum state for a lawsuit, even though Dorigo doesn't deliver to those states and does not operate in those states. But I think Mr. Capello's argument, their counsel's argument, is that you target the New England market specifically, so it shouldn't be surprising to you that the product injures somebody in New Hampshire. So how do you respond to that? I would respond to that, Your Honor. If the Supreme Court intended for the minimum contact requirements to be satisfied by selling a product that a customer ultimately distributes to another state would subject the original seller, in this case Dorigo, to any of those states, they could have said that. And they haven't. In fact, they have specifically rejected it. And actually, I would point the court to Justice Kennedy's opinion in the McIntyre matter. He actually discusses this very scenario where he talks about a farmer in Florida selling to a distributor who then nationally distributes it and suggesting would that open that farmer to a lawsuit in Alaska or any state for that matter. And they had the opportunity to say, yes, that would. And they specifically rejected that. So they have said that the due process requirements require more than that. Again, the focus for due process requirements is the contacts of Dorigo, not the contacts of the plaintiff, not the contacts of another third party. It is the contacts of Dorigo that are the proper focus for a due process analysis as it relates to Dorigo. And in here, the contacts are entirely lacking. And Mr. Capella would argue that this case is the same as the Ford Motor Company case. I would argue just the opposite. I don't think we could be any further from the Ford Motor case in terms of a factual comparison. When you look at the Ford Motor case, obviously Ford had locations in each of the states, the two states, Minnesota and Montana. The accidents occurred in those two states, Montana and Minnesota. Ford was actively advertising to customers in those states. And while the vehicles were not originally sold in those states, they were resold in those states and Ford, I think it was as it was described in the opinion, was actively encouraging an after-sale market in those states because they, again, were marketing their sales and servicing of vehicles in those states. And so here we contrast that to here. Dorigo doesn't have locations in those states. While there has been kind of a discussion back and forth about the symptoms worsening or becoming evident in New Hampshire, the actual incident, the ingestion of the allegedly tainted lettuce or food occurred in New Jersey. Dorigo is not advertising to a market in New Hampshire. It is not doing any of the things that Ford was doing in its case and which kind of prompted the court to find that jurisdiction was appropriate in Montana and Minnesota. That's completely lacking in this case. And so it's for those reasons that the due process requirements are not satisfied here and we would request that the court affirm the district court's finding on the motion to dismiss. Thank you. Okay, Ms. Quinlan, you have one minute for rebuttal. One point on rebuttal, Your Honors. There was a representation made by counsel for Restaurant Depot that there were no flyers sent to members in New Hampshire before 2019. That is incorrect. I did not hear any such statement on his part. The question seems to be whether in the flyers that it sent to New Hampshire, it was encouraging the sale of all of its products, not merely non-food products. Can you enlighten us on that? I can, Your Honor. In fact, it was for food products. Page 191 of the record is a flyer from April of 2018 featuring the very product at issue in this case, romaine lettuce, and market information and growing information for that product. Thank you. Okay. There being no other cases, thank you very much. Counsel is approved by both parties, and the court is recessed until tomorrow, 930 A.M.